# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:11CV14-FDW-DSC

| | |
|---|---|
| REGINALD J. LOVE, SR., )<br>Plaintiff, )<br> )<br>vs. )<br> )<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>Defendant. )<br> ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #13) and "Memorandum ... in Support ..." (document #14), both filed June 22, 2011; and Defendant's "Motion for Summary Judgment" (document #16) and "Memorandum in Support ..." (document #17), both filed August 25, 2011. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On October 28, 2008, Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he became disabled as of May 14, 2008. Plaintiff's application was denied initially and on reconsideration, and a hearing was held on October 29, 2009.

On January 28, 2010, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr. 51-65). In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ then found that Plaintiff suffered from adjustment disorder and chronic leg pain which were medically determinable "severe impairments," but his impairment or combination of impairments did not meet or medically equal any of those listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ went on to find that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform light work[2] with the following limitations: a sit/stand option (sit one hour and stand thirty minutes alternating between the two positions throughout the day); walking only up to one hundred feet; occasional pushing/pulling using lower extremities; and simple routine repetitive tasks in a non-production and low-stress environment with limited interpersonal demands (Tr. 59). The ALJ determined that Plaintiff could not perform his past relevant work.

The ALJ then correctly shifted the burden to the Commissioner to show the existence of other jobs in the national economy which the Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert ("VE") identified three light jobs (bench assembler, nut and bolt assembler, and electrical accessory assembler) that the Plaintiff could perform and stated that more than 4,300 of these jobs existed in North Carolina.

Plaintiff's attorney asked the VE about the sit/stand option and whether the jobs she had

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

2

identified would accommodate such an option (Tr. 96). The ALJ commented that he understood the VE's testimony to be that one hundred percent of those jobs would allow that option. The VE went on to answer the question asked by Plaintiff's attorney and testified that close to one hundred percent, if not one hundred percent, of the jobs identified allowed for a sit/stand option (Tr. 96). When Plaintiff's attorney asked the VE how she defined low stress, the ALJ told Plaintiff's attorney that the definition was his to make, not the VE. (Tr. 97). However, the ALJ allowed Plaintiff's attorney to continue with that line of questioning. Id.

Plaintiff's counsel then asked the VE if an individual received a Global Assessment of Functioning ("GAF") score of 50, whether that would have an effect on the person's ability to maintain a full-time job (Tr. 98).[3] The ALJ then stated that Plaintiff's counsel should give a time frame for when the score was assessed (Tr. 98).

In his decision, the ALJ found that the VE's testimony provided substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform and that he was not disabled. (Tr. 65).

By notice dated November 10, 2010, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on January 7, 2011. Plaintiff assigns error to the ALJ's alleged failure to fully develop the VE's testimony, failure to give proper weight to Plaintiff's GAF scores, and incorrect reliance on the fact that none of Plaintiff's treating physicians ever identified any functional restrictions. See Plaintiff's "Memorandum in Support ..." at 9, 11-14 (document #14).

---

[3]The Global Assessment of Functioning is a numeric scale ranging from 0 to 100 used by mental health professionals to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Edn. Am. Psychiatric Ass'n 1994) (hereinafter, DSM IV).

Plaintiff also assigns error to the Appeals Council's failure to remand for consideration of new evidence (the allowance of Plaintiff's Medicaid claim by a state agency). Id. at 9-11. The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the

4

evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

Plaintiff contends that the Appeals Council failed to properly review the ALJ's decision based upon new and material evidence (a finding of disability by another governmental agency), and asks the Court to remand for consideration of new evidence. Statutory authorization for judicial review of the Commissioner's decision limits such review to the "final decision" of the Commissioner. See 42 U.S.C. § 405(g). In this case, Plaintiff requested review of the ALJ's decision (Tr. 47), and review was ultimately denied by the Appeals Council (Tr. 1-3), making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481; see Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (when the Appeals Council specifically incorporated new evidence into the administrative record, the reviewing court would consider the record as a whole, including the new evidence, to determine whether the Commissioner's decision is supported by substantial evidence); see also Morrison v. Astrue, No. 3:09cv536, 2011 WL 1303651, at*5 (W.D.N.C. Mar. 31, 2011) (stating, "[t]he Court will consider the new evidence [submitted to Appeals Council], along with the entire record, in reviewing Plaintiff's substantive assignments of error"). Accordingly, the Court will review the record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence. See Wilkins, 953 F.2d at 96; see also Morrison, 2011 WL 1303651 at *5 (upholding Magistrate Judge's consideration of new evidence submitted to Appeals Council along with the

5

entire record in reviewing assignments of error).

The new evidence Plaintiff submitted does not undermine the substantial evidence supporting the ALJ's decision. Plaintiff submitted to the Appeals Council a June 2010 finding by the North Carolina Department of Health and Human Services that he was disabled during the relevant time period for purposes of Aid to the Disabled-Medical Assistance (Tr. 44-46). That decision by the State agency specifies that it should in "no way affect[] any pending or future claims for Social Security or Supplemental Security Income benefits." (Tr. 46). A decision on disability by another agency is not binding on the Commissioner. 20 C.F.R. §§ 404.1504, 416.904; Social Security Ruling ("SSR") 06-03p, 71 Fed. Reg. 45593, 2006 WL 2263437 (Aug. 9, 2006); see also 20 C.F.R. §§ 404.1527(e), 416.927(e) (issue of disability is reserved for the Commissioner to determine). Plaintiff does not argue that the evidence provided a basis for overturning the decision. He contends only that the Appeals Council should have provided an explanation of its consideration of the evidence, which it was not required to do. Although SSR 06-3p requires that evidence of a disability decision by another governmental agency must be considered, Plaintiff cites to no ruling, regulation, or case law which requires the Appeals Council to explain the consideration given to such evidence. See Best v. Astrue, No. 5:06-CV-301-D, 2008 WL 64687, at *11-12 (Jan. 3, 2008) (holding that there is no requirement that the Appeals Council explain consideration given to decisions by other governmental agencies). Accordingly, Plaintiff's assignment of error that the matter should be remanded for consideration of new evidence should be overruled.

### III.  DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled," as that

6

term of art is defined for Social Security purposes.[4] Plaintiff argues that the ALJ failed to fully develop the record by interrupting Plaintiff's counsel during questioning of the vocational expert, rephrasing questions, and suggesting the answers to the VE. See Plaintiff's "Memorandum in Support ..." at 9 (document #14). Social Security proceedings are not adversarial and the ALJ has a duty to develop the record. This duty includes control over the examination of witnesses. "[W]hile '[t]he claimant and the representative have the right to question the VE fully on any pertinent matter within the VE's area of expertise[,] . . . the ALJ will determine when they may exercise this right and the appropriateness of any questions asked or answers given.'" Libby v. Astrue, No. 10-292, 2011 WL 2940738, at *13 (D. Me. July 19, 2011) (quoting Social Security Administration, Office of Disability Adjudication and Review, Hearings, Appeals and Litigation Law Manual ("HALLEX") § I-2-6-74(C)).

The Court has reviewed the transcript of the hearing and concludes that the ALJ properly interposed questions or comments during cross-examination by Plaintiff's counsel. The central focus of Plaintiff's argument concerns the ALJ's instruction that questions to the VE concerning Plaintiff's GAF score should include a time frame. This point was particularly relevant. "A GAF score may reflect the severity of a patient's functioning or her impairment in functioning at the time the GAF score is given. Without additional context a GAF score is not meaningful." Green v. Astrue, C/A No. 1:10-1840-SVH, 2011 WL 1770262, at *18 (D.S.C. May 9, 2011) (emphasis added); see also American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

7

33 (4th ed., text rev. 2000) ("DSM-IV-TR") (indicating that unless otherwise noted, the GAF score generally refers to the level of functioning at the time of evaluation).

Additionally, the ALJ properly asked the VE a hypothetical which included all the limitations found in his RFC (Tr. 59 at Finding 5, 92-94). The ALJ's reliance on the VE's testimony was entirely reasonable.

Plaintiff next assigns error to the ALJ's purported failure to discuss and give proper weight to each of the GAF scores in the file. A GAF score is intended to be used in treatment decisions and may have little to no bearing on a plaintiff's occupational functioning. See Kornecky v. Commissioner of SSA, 167 F. App'x 496, 511 (6th Cir. 2006); Lopez v. Barnhart, 78 F. App'x 675, 678, 2003 WL 22351956 (10th Cir. 2003); Wilkins v. Barnhart, 69 F. App'x 775, 780, 2003 WL 21462579 (7th Cir. 2003). A GAF score, standing alone, is not evidence of an impairment that seriously interferes with Plaintiff's ability to work. Lopez, 78 F. App'x at 678; see also Ward v. Astrue, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) ("[A]n opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations."). "[T[he Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 F. App'x 684, 692, n.5, 2005 WL 1317040 (11th Cir. June 2, 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

"[A]n ALJ is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed into the Administrative Record." McDaniel v. Astrue, No. 1:09cv109, 2010 WL 3211050, at *6 (W.D.N.C. July 22, 2010) (quoting Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991)). In McDaniel, the Magistrate Judge found no reversible error in the ALJ's failure to

mention a GAF score. Id. Indeed, "the failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination." DeBoard v. Comm'r. of Soc. Sec., No. 05-6854, 2006 WL 3690637, at *3 (6th Cir. Dec. 15, 2006) (citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (while a GAF score may be of "considerable help," it is not "essential" to determining an individual's residual functional capacity.)). This is particularly true in this case where the ALJ fully evaluated the records and treatment notes upon which the GAF scores were based (Tr. 58-63). See Bradley v. Astrue, 528 F.3d 1113, 1115 n.3 (8th Cir. 2008) (indicating that the ALJ necessarily considered the GAF score when considering the overall evidence from the physician who assessed the score).

There are four GAF scores in the record. The first three were assessed in October and November 2008, during a time of decompensation by Plaintiff. Although the ALJ did not mention each GAF score, he thoroughly evaluated the treatment records during this time period. (Tr. 57, 59, 61). As noted by the ALJ, Plaintiff was treated at CMC-Randolph four times in October and November 2008 when he presented with complaints of depression, suicidal and homicidal ideation, decreased sleep and loss of appetite (Tr. 212-253). On October 10, 2008, he was diagnosed with adjustment disorder, depressed mood, and alcohol abuse r/o dependence (Tr. 227). He was given a GAF score of 40, indicating a major impairment in several areas such as work or school, family relations, judgment, thinking or mood (Tr. 227). DSM-IV-TR at 34. Within the month, Plaintiff was admitted due to suicidal and assaultive ideation, and at the time of admission he was again given a GAF score of 40 (Tr. 240, 248). During his nine day stay at CMC-Randolph, Plaintiff was treated with Remeron. His GAF improved to 55 , indicating only moderate symptoms or moderate difficulty in social, occupational, or school functioning at the time of discharge on November 12, 2008 (Tr. 248). DSM-IV-TR at 34. The treatment notes indicate that Plaintiff's symptoms were

9

controlled with Remeron. Plaintiff was reporting good sleep, good appetite, improved mood, and less depression (Tr. 248). Upon discharge, Plaintiff was demonstrating no neurovegetative signs, no symptoms of depression, and no psychosis (Tr. 248). He reported improvement in his mood with the medication and tolerated the treatment well (Tr. 248). However, Plaintiff did not follow up with recommended treatment for his mental health issues.

While the ALJ did not specifically refer to the GAF scores during this month-long period of time in 2008, he did address the treatment and diagnoses that Plaintiff received at CMC-Randolph (Tr. 57, 59, 61). He noted that Plaintiff had a period of decompensation that was eventually controlled with medication (Tr. 59, 61). Any failure to mention the GAF scores in this instance was harmless, especially since at the time of discharge, Plaintiff's score was at 55 indicating moderate symptoms entirely consistent with the ALJ's findings (Tr. 58-59).

Plaintiff was also seen by Dr. Carol Gibbs for a consultative examination in April 2009 (Tr. 258-261). Dr. Gibbs diagnosed Plaintiff with mood disorder not otherwise specified, rule out alcohol abuse, rule out borderline intellectual functioning, mixed personality disorder with antisocial features, and a GAF of 50 (Tr. 260). Again, while the ALJ did not mention this GAF score, he thoroughly evaluated the report from Dr. Gibbs (Tr. 57-59, 61-62). The ALJ noted that Dr. Gibbs evaluated Plaintiff after a five month absence from any treatment (Tr. 61). Consistent with the ALJ's findings, Dr. Gibbs concluded Plaintiff was capable of understanding simple, repetitive instructions and tasks (Tr. 61, 260). Dr. Gibbs also stated that Plaintiff's ability to deal with other people in a work environment would be significantly impaired, as would his ability to effectively deal with work pressures (Tr. 260). The ALJ largely accounted for these limitations in his RFC. He limited Plaintiff to simple routine repetitive tasks in a non-production and low-stress environment with limited interpersonal demands (Tr. 59 at Finding 5).

The GAF scores were considered by the state agency psychologists whose opinions the ALJ also relied upon (Tr. 63, 275, 279, 300, 314). Both state agency psychologists considered the evidence of Plaintiff's treatment with CMC-Randolph and the evaluation by Dr. Gibbs (Tr. 275, 314). Both mentioned the discharge GAF score from CMC-Randolph and the GAF score assessed by Dr. Gibbs (Tr. 275, 314). After reviewing this evidence, the state agency psychologists opined that Plaintiff could perform simple routine repetitive tasks in a low-stress, non-production pace setting with limited interpersonal demands (Tr. 279, 300). This evidence, along with the evidence from CMC-Randolph and Dr. Gibbs, provides substantial support for the ALJ's RFC finding. See 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p, 1996 WL 374180, at *2 (recognizing that the opinions of non-examining state agency medical sources, insofar as they are supported by evidence in the record, should be considered as those of highly qualified physicians who are experts in the evaluation of the medical issue in disability claims under the Social Security Act).

Plaintiff's contention that a GAF of 50 or below is a benchmark of employability in the Social Security arena is without merit. A person having one of the "serious symptoms" identified in the GAF scale of the DSM-IV-TR, including being "unable to keep a job," may be rated with a GAF of 50. However, there is no reciprocal conclusion that a person with a GAF of 50 is unable to meet the basic mental demands of competitive remunerative unskilled work. See Seymore v. Apfel, No. 97-5068, 1997 WL 755386, at *1-2 (10th Cir. Dec. 8, 1997) (GAF of 45, standing alone, "does not evidence an impairment seriously interfering with claimant's ability to work"). The GAF scale does not have a direct correlation to the severity requirements utilized in the Social Security disability program.

The ALJ also considered Plaintiff's noncompliance with treatment for his mental impairment (Tr. 62). While Plaintiff claimed he could not afford medical treatment, the record does not support

11

his contention. Plaintiff's mother testified that she would buy him medication (Tr. 91). Plaintiff never sought additional emergency treatment or explored any other forms of free or subsidized mental health treatment. He was improving on Remeron. The ALJ properly considered Plaintiff's allegations of mental impairments to be less severe than alleged. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (finding "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility."); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (stating, "If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The ALJ also reasonably cited Plaintiff's testimony that he would accept a job offer from his previous employer. (Tr. 62, 101). Plaintiff indicated that he would have difficulty lifting the required weight, but he did not indicate that any mental limitations would prevent him from going back to that job (Tr. 101).

Apart from the GAF scores, the record includes substantial evidence on Plaintiff's mental impairments that support the ALJ's findings. The ALJ reviewed all the evidence from the providers who assessed the GAF scores and from the state agency psychologists who considered the scores. The ALJ's RFC finding is supported by this evidence. Therefore, any failure on the part of the ALJ to specifically discuss the scores in his decision is not cause for remand.

Plaintiff finally argues that substantial evidence does not support the ALJ's decision because the ALJ used "presumption, speculations, and suppositions" to support his findings. See Plaintiff's "Memorandum in Support ..." at 13-15 (document #14), citing SSR 86-8. To the contrary, the ALJ considered all the medical evidence, including opinions from treating, consultative, and state agency medical professionals, along with Plaintiff's treatment, activities, and testimony. The ALJ reasonably concluded that Plaintiff was not disabled through the date of the decision (Tr. 54-65).

Plaintiff argues that the ALJ erred by concluding that the failure of Plaintiff's treating physicians to opine on his functioning can be considered an implicit opinion that they did not believe he was disabled. While the ALJ did mention that no physician who treated Plaintiff opined on his functional limitations - a statement that is undisputed and accurate - he went on to consider other evidence of record to support his opinion. Even if this Court were persuaded that the ALJ erroneously relied on the fact that no treating physician opined upon functional limitations, this error was harmless. Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009) ("Consequently, the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.")

As detailed above, there is ample support for the ALJ's findings that Plaintiff retained the ability to perform simple routine repetitive tasks in a non-production and low-stress environment with limited interpersonal demands.

There is also substantial evidence to support the ALJ's findings related to Plaintiff's physical impairments. The record contains a consultative examination with Dr. Glenn J. Baumblatt on March 9, 2009 (Tr. 254-256). Upon physical examination, there were no significant abnormalities. Dr. Baumblatt concluded that based upon the examination, Plaintiff could sit, stand, move about, lift, carry, handle objects, hear, speak, and travel (Tr. 255). Plaintiff's gait was generally intact. He could stand and walk on his heels (he stated he could not walk on his toes), squat and rise, and could tandem walk. His muscle strength was 5/5 without atrophy, reflexes were normal, and grip strength was strong. He could raise his arms overhead, and perform dexterous motions of the hand (Tr. 255). The ALJ's finding that Plaintiff could perform light work with additional limitations (sit one hour and stand 30 minutes, alternating between the two positions throughout the day; walk 100 feet; and occasionally push/pull using the lower extremities) is supported by Dr. Baumblatt's

objective findings and his opinion.

The ALJ's findings regarding Plaintiff's physical capacity are also supported by the opinions of the state agency physicians. The physicians opined that Plaintiff could perform medium work[5] (Tr. 285-292, 316-323). See 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p, 1996 WL 374180, at *2. The ALJ's RFC was even more restrictive than the state agency physicians' opinions. Burns v. Barnhart, 312 F.3d 113, 130 n.12 (3d Cir. 2002) ("Further evidence that the ALJ did not ignore [Plaintiff's] allegations of his own limitations is the fact that the ALJ expressly disagreed with the finding made by the state agency....")

The ALJ properly determined that Plaintiff's evidence was not credible to the extent that it was inconsistent with his RFC finding (Tr. 60). Plaintiff testified that he could only walk, stand, and sit for about two to three minutes at a time, could not lift a gallon of water frequently (Tr. 79-81), and had pain in his arms, legs, and back (Tr. 75, 80). The medical record does not support such severe limitations. Dr. Baumblatt's examination did not reveal any clinical findings consistent with those claims. (Tr. 254-256). As the ALJ noted, Plaintiff made no complaints of lower extremity pain in October 2009 and no significant findings were noted upon examination (Tr. 338-342). Imaging of the lumbar spine revealed only scattered degenerative changes (Tr. 337). And as noted by the ALJ, treatment for Plaintiff's pain was conservative and sporadic (Tr. 249, 336, 339). Plaintiff also reported activities such as reading and walking (Tr. 259), which are inconsistent with his purported limitations.

Plaintiff also argues that the ALJ erred in failing to re-contact his physicians. Plaintiff recites the various instances under the regulations when it is necessary to re-contact a treating

---

[5] One also opined that Plaintiff could only perform occasional pushing and pulling with the lower extremities, a limitation the ALJ included in his RFC finding (Tr. 59 at Finding 5, 317).

source, all of which are premised on the ALJ finding that the evidence is inadequate to assess disability. 20 C.F.R. §§ 404.1512(e), 404.1527(c)(3), 416.912(e), 416.927(c)(3). Here, the record contains sufficient evidence for the ALJ to render a decision. He was not required to re-contact a treating or other medical source. 20 C.F.R. §§ 404.1512(e), 416.912(e); see Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004) (holding that there is no need to re-contact a physician where the ALJ can determine from the record whether the applicant is disabled).

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC, and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #13) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #16) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo

review by the District Judge.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).  Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

Signed: September 6, 2011

David S. Cayer
United States Magistrate Judge